UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 2: 10-30-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DONALD JUSTICE, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendant. | ) | |

On August 12, 2010, Defendant Donald Justice moved the Court to suppress evidence seized in connection with a search of his vehicle and motel room. [Record No. 24] The United States responded to the motion on August 20, 2010. [Record No. 29] An evidentiary hearing was conducted regarding this motion on August 23, 2010. The United States offered the testimony of two witnesses at the evidentiary hearing: Mike Palmer, a Detective with the Maysville Police Department and Tim Fegan, Director of the Buffalo Trace Gateway Narcotics Task Force. At the conclusion of the hearing, the Court denied the motion to suppress. This Memorandum Opinion provides further explanation for the Court's ruling on this motion.

**I.**

Detective Palmer offered the following testimony during the August 23, 2010, which the Court found credible. In April 2009, officers with the Maysville Police Department received information from the Defendant's former wife that the Defendant was engaged in criminal activity. More specifically, Ms. Justice advised the police that: (i) the vehicle Justice was

driving was not properly registered; (ii) Justice was selling drugs; and (iii) Justice, a convicted felon, possessed a firearm. At the time this information was provided, the Defendant was staying at the Riggs Motel in Maysville, Kentucky. The motel was later described as a small motel with approximately eight rooms and a small parking lot. Although member of the police department did not begin a thorough investigation of the allegations provided by the informant, at some point they were able to confirm that Justice had not properly registered his vehicle.

On April 27, 2009, Detective Palmer observed the Defendant on Forest Avenue in Maysville. Palmer testified that, as he followed the vehicle to the Riggs Motel, he contacted police dispatch and requested information regarding registration of the truck being driven by Justice. Justice pulled into the motel parking lot and Palmer pulled in immediately behind the Defendant's vehicle. As Detective Palmer's car was coming to a stop, he received information from police dispatch that the truck driven by the Defendant was not properly registered. Palmer was dressed in plain clothes at the time of the encounter. Likewise, he did not activate his police lights or siren and did not draw his weapon.

Although Palmer's car blocked the Defendant's truck from backing out of the parking lot, he did not initially place Justice in handcuffs and did not restrict his movements. Instead, Detective Palmer approached Justice and advised him that the truck did not appear to be properly registered. Upon request, Justice produced his license and paperwork which apparently indicated that the truck had been registered in the state of Ohio earlier that same day. During their conversation, Palmer also referenced an earlier encounter in which Justice had been stopped in Ohio and questioned about other possible criminal activity. Although Palmer was not directly

involved in the earlier stop and questioning, he was nearby and was also advised that Justice had stated that he had a gun in his possession at the time, but that the weapon had not been discovered. During the parties' conversation, Palmer also requested and obtained verbal consent to search the Defendant's vehicle. According to Detective Palmer, Justice gave consent to search without hesitation. And at no time was consent revoked or restricted in any way.

Palmer also contacted an officer in Ohio to verify Justice's statement that his truck had been registered earlier that day. According to Palmer, the Ohio officer advised that if such registration had occurred, the computer check would also reflect the up-to-date registration.

While Palmer was attempting to sort out the registration issue with the Defendant but after consent to search his vehicle had been given, additional officers arrived at the scene. These other officers proceeded to search Justice's truck, eventually discovering a single round of ammunition and drug paraphernalia, described as two cut straws with white residue. The two officers involved in the search of Defendant Justice's truck were identified by Detective Palmer as Detective Ken Fuller of the Maysville Police Department and Tim Fegan, Director of Buffalo Trace Gateway Narcotics Task Force.

On cross-examination, Detective Palmer testified that Justice was not cited for failure to have proper registration of the truck he was driving the night of his arrest. He further confirmed that, after receiving information from Justice's former wife prior to April 27, 2009, he did not take any affirmative steps to confirm whether Justice was involved in drug distribution activities at the Riggs Motel. Palmer also testified that the length of his initial encounter with Justice was

brief. In light of all the testimony, the Court finds that Palmer obtained consent to search the Defendant's vehicle within two to four minutes of the initial encounter.

As the search of Defendant Justice truck was being conducted, co-Defendant Robin Wagner exited one of the motel rooms which was later confirmed to be the room rented by Defendant Justice. Due to his location at the rear of Justice's vehicle, Detective Palmer did not overhear the exchange between Wagner and the other officers.

Director Fegan also provided testimony during the August 23, 2010, hearing that the Court found credible. Fegan testified that he was aware of the allegations made by the Defendant's estranged or ex-wife prior to April 27, 2009. On April 27, 2009, Fegan observed Justice crossing the bridge from Ohio into Maysville. According to Fegan, before this date he had been advised that the truck being driven by Justice had registration belonging to another vehicle.

Because he had to travel into Ohio and turn around, Fegan did not reach the Defendant's vehicle until it was in the parking lot at the Riggs Motel. By that time, Defendant Justice had given consent for the initial search. As the search of the truck was taking place, Wagner exited the motel room and approached the officers to ask what was happening. A short time later, one of the officers observed what appeared to be prescription drugs and marijuana in close proximity to Wagner (near her feet and on the hood of Justice vehicle). Also at this time, drug paraphernalia was found in the vehicle.

Wagner – described as the Defendant's live-in girlfriend – denied that she rented the motel room she had just exited. When asked if she objected to it being searched, she stated she

didn't care, but that officers should check with the Defendant. The Defendant initially refused to respond to questions regarding consent to search the room. However, after the owner of the motel confirmed that the room was rented to Justice, and officers advised Justice that they would seek to obtain a search warrant for the room, Justice orally consented to the search. Prior to seeking oral consent to search the motel room, officers advised both Justice and Wagner of their Miranda rights. However, neither was placed under arrest at that time.

The search of the Defendant's motel room resulted in the discovery of prescription drugs and two firearms. The firearms were found beneath a dresser after several minutes of searching by police. At the time the weapons were discovered, both Wagner and Justice were placed under arrest. The arrest of the Defendants occurred approximately 75 minutes after the initial encounter between Detective Palmer and Justice in the motel parking lot. Until that time, neither Justice nor Wagner had been placed in custody. In fact, Fegan testified that, while the search of the motel room was being conducted, Justice came "in and out." At no time did he attempt to revoke or limit consent for the search. Fegan further stated that, until the weapons were found, Justice had a pleasant demeanor.

## II.

An investigatory stop of a vehicle is permissible under the Fourth Amendment if supported by reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). Since an investigatory stop is less intrusive to one's personal security than an arrest, the level of suspicion necessary for such a stop is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). For purposes of determining whether

reasonable suspicion exists, the Supreme Court has instructed that a reviewing court must consider the totality of circumstances to determine whether the detaining officer has a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citations omitted). In considering all the circumstances, the question is not whether there is a possible innocent explanation for each of the factors, but whether all of them taken together give rise to reasonable suspicion that criminal activity may be afoot. *Id*. at 274-75.

Here, the officers had reasonable suspicion that Justice had (i) committed a traffic violation and (ii) was engaged in criminal conduct at the time he was questioned in April 27, 2009.[1] At that time, officers had been given information from a person known to police to be associated with the Defendant. While the informant certain could have been harboring a grudge at the time the information was provided, that fact alone does not render the information worthless. The police were aware that Justice was a convicted felon. Further, a subsequent records check revealed that his vehicle was not properly licensed. Under those circumstances, a traffic stop was appropriate.

The Court disagrees with counsel's argument that the officers were not entitled to search the Defendant's truck after he provided documents indicating that his vehicle had been registered earlier in the day in Ohio. Based on the earlier information about fraudulent registration and the fact that a computer check did not reveal proper registration, production of paperwork should

---

[1] It is not entirely clear that the encounter with Justice constituted a traffic stop. At the time Detective Palmer approached Justice, he had parked his car. However, because Palmer testified that he handled the matter as a traffic stop, the Court will examine the officer's conduct from that perspective.

not have ended all inquiry. However, while this was occurring, Detective Palmer also obtained contemporaneously permission to search the Defendant's vehicle. The Court finds that this permission was given as part of the ongoing conversation with Detective Palmer and occurred within minutes of the initial encounter. Under the circumstances, Detective Palmer's request was appropriate. At the time the request was made, Palmer was aware that Justice was a convicted felon. Other information had been provided that he possessed a weapon. For his own safety as well as the safety of others, a request to search the truck was appropriate. Further, the United States has clearly proven that Justice's consent was "unequivocal, specific, intelligently given and not influenced by any duress or coercion." *United States v. Taylor*, 956 F.2d 572, 577-78 (6th Cir. 1992) (citing *United States v. Williams*, 754 F.2d 672, 675 (6th Cir. 1985)).

In *Terry*, the Supreme Court focused its discussion on brief investigatory stops made by police officers on the basis of reasonable suspicion not amounting to probable cause for arrest. There, the reasonable suspicion arose from conduct observed by the officer who made the stop. In subsequent cases, however, the Court has clarified that a *Terry* stop is also permissible where the stop relates to a crime already completed and where the information supplying the reasonable suspicion comes from another person rather than the officer's personal observations. *See United States v. Hensley*, 469 U.S. 221, 227 (1985) (holding that an officer has the authority to make a *Terry* stop "when [he] has reasonable, articulable suspicion that the person *has been*, is, or is about to be engaged in criminal activity") (quoting *United States v. Place*, 462 U.S. 696, 702 (1983)); *United States v. Cortez*, 449 U.S. 411, 417, n. 2 (1981).

Although stopping a vehicle and detaining its occupants constitutes a seizure under the Fourth Amendment, such a stop is constitutional when an officer has probable cause to believe that a traffic violation has been committed or when an officer has a "particularized and objective basis" for suspecting that the occupants of the vehicle are engaged in criminal activity. *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007); *United States v. Keith*, 559 F.3d 499, 503 (6th Cir. 2005). The totality of the circumstances must be considered in determining whether an investigatory stop is reasonable. Here, the Court concludes that the stop was entirely reasonable. At the time Detective Palmer approached Defendant Justice, he had probable cause to believe that a traffic violation had occurred and reasonable suspicion that the Defendant was engaged in criminal conduct.

Counsel for Justice also asserts that evidence obtained from the search should be suppressed because the traffic stop was simply a pretext. While the traffic stop was pretextual in the sense that the trooper was looking for a reason to stop Justice, that motivation does not render the officer's actions unconstitutional. *Whren v. United States*, 517 U.S. 806, 813 (1996). And as noted above, the Court also rejects Justice's assertion that his traffic stop was longer than necessary and, therefore, unreasonable. At the time Palmer approached Justice, it was clearly reasonable to ask permission to search the vehicle for weapons based on information Palmer had obtained.

### III.

At the time Detective Palmer approached Defendant Justice's stopped vehicle in the parking lot of the Riggs Motel, the detective has reasonable suspicion that Justice was operating

a vehicle that was not properly registered (i.e, that Justice was observed committing a traffic violation). Additionally, Detective Palmer had a reasonable basis to request to search the Defendant's vehicle while he was attempting to confirm whether Justice's vehicle was properly registered. Further, Defendant Justice provided consent to search his vehicle as well as the motel room he rented. This consent was given freely and voluntarily. At no time during either search did Justice attempt to limit or withdraw the consent he had given. In short, under the circumstances presented, there is no basis to suppress the evidence obtained as a result of the search of the Defendant's vehicle or his motel room.

This 24th day of August, 2010.

Signed By:
*Danny C. Reeves* DCR
United States District Judge